# City of Birmingham *v.* Armour Packing Co.

*Assumpsit.*

(Decided February 3, 1910. Rehearing denied June 30, 1910. 52 South. 828.)

*Licenses; Subject; Payment.*—The ordinance authorized the city to impose an occupation tax on the sale of packing house products, not including green meats, of $150.00, and a tax on each wholesale dealer of green meats on commission or otherwise, of $250.00. The packing house paid the license of $150.00, which was accepted by the city, and receipt issued for the company, reciting payment and authorizing it to do a packing house business for the current year. The ordinance was subsequently amended imposing on each wholesale dealer selling green meats on commission or otherwise where other packing house products were not handled, a license of $250.00, and on each wholesale dealer in packing house products generally including green meats, of $400.00, and each wholesale dealer in packing house products where no green meats were handled, at $50.00. Held, that dealing in green meats is not properly included in the business carried on by packing houses, and the city was justified in imposing an additional tax of $250.00 upon packing houses dealing in green meats, and that the language of the receipt issued by the collector, in so far as it was a departure from the law, was not binding on the city.

[City of Birmingham v. Armour Packing Co.]

APPEAL from Birmingham City Court.

Heard before Hon. C. C. NESMITH.

Action by the Armour Packing Company against the City of Birmingham to recover a license fee of $250.00, paid under protest, as part of a license to do business in said city. Judgment for plaintiff and defendant appeals. Reversed and remanded.

R. H. THACH, for appellant. There is no question about the right of the city to impose several licenses or taxes on the same person or business.—24 A. & E. Enc. of Law, 787. The amount of the license fee or tax may be increased or diminished at any time in the discretion of the body imposing it.—21 A. & E. Enc. of Law, 809; *Phila. F. Assn. v. New York,* 119 U. S. 100; *State v. Worth,* 116 N. C. 1007; *Aetna S. L. Co. v. Taylor,* 4 Ohio 180; *W. U. T. Co. v. Harris,* 52 S. W. 748; *Kelly v. Dwyer,* 7 Lea. 180; *State v. Hilbert,* 72 Wis. 184.

TILLMAN, BRADLEY & MORROW, for appellee. Except in cases of spirituous, vinous or malt liquors, when a license to do a general business has been exacted and paid, another license cannot be required for the doing of a particular act or series of acts constituting an integral part of such business; nor can a municipality construct out of its constituent elements two severable taxable privileges.—*Mefford v. City of Sheffield,* 148 Ala. 539; *Gamble v. Erdreich Bros.,* 143 Ala. 506; *Montgomery v. Kelly,* 142 Ala. 552; *Oom v. Fowler,* 26 S. W. 786. An ordinance undertaking to raise a license before the time limited in the license is void for unreasonableness.—*Lantz v. Hightower,* 46 N. J. L. 102; *Mansfield v. St. Paul,* 25 N. W. 449; *City of Lowell v. Archambault,* 1 L. R. A. 458.

[City of Birmingham v. Armour Packing Co.]

SAYRE, J.—It is asserted, on the authority of *Mefford v. Sheffield*, 148 Ala. 539, 41 South. 970, and cases of like tenor there cited, that, when a license to do a general business has been exacted and paid, a municipality cannot, in the absence of statutory authorization to that effect, subsequently, and during the term covered by the license, construct out of the constituent elements of the business licensed two or more taxable privileges, so as to increase the burden of taxation upon the business originally licensed; and this, not because the issue of a license constitutes a contract of indefectible obligation, but because a licensee should not be subjected to the uncertainties that would constantly arise if limitations of which he could have no notice in the beginning should be imposed to meet every change in sentiment or every shift of view upon questions which should have been examined and determined by the taxing power before the license was issued.—*Lowell v. Archambault*, 189 Mass. 70, 75 N. E. 65, 1 L. R. A. (N. S.) 458; *Lantz v. Hightstown*, 46 N. J. Law, 102. The Legislature is, of course, competent to deal with the subject as it deems best. The asserted doctrine in respect to the taxing power of municipal corporations is conceded; but we think the appellee's application of the principle to the facts of the case in hand cannot in reason be sustained.

It is stated in the bill of exceptions that in February, 1908, the appellant municipality, through its authorized license tax collector, accepted the sum of $150 from appellee, which thereupon received a receipt, reciting the payment aforesaid, and purporting to authorize it to do business in packing house products during the remainder of the current year. At that time an ordinance of the city of Birmingham imposed occupation taxes as follows:

"183. Green meats. Each wholesale dealer selling on commission or otherwise, $250.00"

"311. Packing house products, not including green meats. Each dealer or broker for, $150.00."

· In March subsequent the city adopted an amendatory ordinance, so much of which as seems to be of concern in this connection we quote:

"183. Green meats. ' Each wholesale dealer selling on commission, or otherwise, . where other packing house products are not handled, $250.00"

"311. Packing house products. Each wholesale dealer in packing house products generally, including green meats, or broker for, $400.00. Each wholesale dealer in packing house products, where no green meats are handled, and where principal business, or broker for, $50.00."

The comprehensive language of the receipt, which seems to have been issued and received as a license, was the language of the license tax collector, rather than the language of the municipal law, and was, to the extent of its departure from the law, of no consequence. By that law the appellee was advised that the license to which it was entitled upon the payment of $150 was a license to deal in packing house products, not including green meat, and so its case must fall outside of the influence of the reason underlying the cases referred to.

But it is agreed between the parties that green meat is a packing house product, that all dealers in packing house products sell green meat, and that its sale is an essential and necessary part of the business of dealers in, or brokers for, on commission or otherwise, packing house products. On a review of the ordinances mentioned, and of the facts agreed, it is seen that appellee's position must be resolved into this: The business of selling packing house products and the busi-

ness of selling green meat are necessary parts of but one business, which by nature is incapable of being separated into constituent parts for the purposes of municipal taxation. We are perhaps constrained to accept the agreement made. But it is not agreed, nor could it well be agreed, in keeping with facts of common knowledge, that the selling of packing house products in general is an essential and necessary part of the business of selling green meats. The fact is otherwise. Green meats are, from the packing house point of view, a raw material. Butchering, without more, has never been considered a manufacture. On the other hand, the business carried on by packing houses is a highly organized form of industry, which converts slaughtered animals into many shapes, and utilizes products of which the mere business of dealing in green meats takes no notice. Packing house products, generally so called, are the manufactured products of the packing house business. Most frequently we understand by them the cured, or cured and packed, products of the industry, products capable of indefinite transportation and preservation, without the aid of artificial cold. Some of them are to be found in every grocery store. Green meats, on the other hand, must be sold soon after slaughter or be preserved in cold storage. We do not doubt, therefore, that there is a substantial distinction between the two businesses, affording a just basis of discrimination between the two in the matter of taxation.

It results that the judgment of the trial court must be reversed, and a judgment will be here rendered for the defendant (appellant.)

Reversed and rendered.

DOWDELL, C. J., and ANDERSON and MAYFIELD, JJ., concur.